UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHERYL PORTER,

                Plaintiff,                             Hon. Ellen S. Carmody

v.

                                                  Case No. 1:17-cv-575

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## OPINION

      This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.   The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.   The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.   For the reasons articulated herein, the Commissioner's decision is **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

      The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).   The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 41 years of age on her alleged disability onset date. (PageID.209). She successfully completed high school, but has no past relevant work. (PageID.52). Plaintiff applied for benefits on February 27, 2014, alleging that she had been disabled since June 2, 2007, due to low back pain, anxiety, depression, cervical fusion, chronic headaches, right shoulder pain, bilateral knee pain, bilateral hand/wrist pain, and IBS. (PageID.209-16, 232). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.108-207).

On December 31, 2015, Plaintiff appeared before ALJ Donna Grit with testimony being offered by Plaintiff and a vocational expert. (PageID.68-106). In a written decision dated April 1, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.41-54). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.32-36). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2014. (PageID.43). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ determined that Plaintiff suffered from: (1) degenerative change of the right knee and chondromalacia of the patella status post anterior cruciate ligament repair; (2) status post cervical fusion; (3) degenerative lumbar disc disease; (4) right shoulder osteoarthritis; (5) fibromyalgia; (6) headaches; and (7) hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.44-47).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, she can stand/walk for 5 hours and sit for 8 hours; (3) she cannot crawl or climb ladders, ropes, or scaffolds; (4) she occasionally stoop, crouch, kneel, reach overhead, and climb ramps/stairs; (5) she cannot be exposed to extremes of heat, cold, or humidity. (PageID.47).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964.

Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 150,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.100-05). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## I.      **Medical Evidence**

The medical evidence presented to the ALJ was extensive. The ALJ described this evidence as follows:

> The record reflects the claimant's musculoskeletal impairments. The claimant has a history of back pain and shoulder pain with a clavicle fracture as a youth. An April 2009 MRI revealed moderate degenerative joint and disc at C5-C6 with moderate posterior disc osteophyte complex effacing the anterior and posterior thecal sac and mildly flattening the ventral spinal cord, which maintains normal cord signal intensity. Also present was bilateral neural foraminal narrowing (Exhibit 6F/102). Thereafter, a nuerological examination in May 2009 revealed moderate paraspinal spasm with restricted mobility. Straight leg raising was negative bilaterally and the claimant was assessed with cervical spondylosis with early radiculopathy and myelopathy (Exhibit 6F/110). An MRI of the lumbar spine in June 2009 revealed increasing degenerative disc disease, but no sign of any specific nerve root impingement (Exhibit 6F/116). . .While the claimant had reported walking three times per week and riding a bike, she reported ongoing pain and elected to undergo surgery on her cervical spine (Exhibit 6F/). In November 2009, the claimant underwent an anterior cervical discectomy at C5-

C6 (Exhibit 6F/139-142). Three months post-surgery, cervical films revealed post-surgical changes at C5-C6, mild neural foraminal impingement at C5-C6 (Exhibit 6F/379). The claimant reported no pain in her right arm and only some numbness and tingling (Exhibit 6F/162). Additional notes regarding her lower back reflect no root pattern involvement and surgery was not recommended for the lumbar spine (Exhibit 6F/162).

The claimant continues to receive injections at Medical Pain Consultants with examinations revealing negative straight leg raise testing with no gross neurovascular deficits (see, e.g., Exhibit 6F/163). While the claimant reported her low back pain was "worse than ever" in November 2010, an MRI indicated minimal degenerative changes at L4-5, but no evidence of disc herniation, canal stenosis, or lateral recess of any clinical significance (Exhibit 6F/187). Neurosurgeon, Bryan Figueroa, M.D., concluded there was no justification for surgical intervention for her lumbar pain (Exhibit 6F/187). Following her February 2012 trigger point injection, the claimant reported being 50 to 80 percent improved and the injections lasting two and one half months (Exhibit 6F/244). Michigan Pain Consultants have continued to treat the claimant with very little change in their records noting she benefits from the paravertebral injections as well as sacroiliac injections and caudal epidurals (Exhibit 6F/242; l0F; 11F).

An April 2013 MRI of the cervical spine revealed well healed postsurgical changes at C5-6, with a mild, but usual, osteophyte along with patent spinal canal and reasonably open neural foramina (Exhibit 5F). John Stevenson, M.D., did not see any obvious source for her neck pain with no obvious neural impingement (Exhibit 6F/380).

The record also reflects the claimant's right acromioclavicular osteoarthritis. She receives injections every three months, which "take the edge off" (Exhibit 6F/253). While the claimant has continued to receive injections every three months at Michigan Pain Consultants, the objective imaging and physical examinations do not suggest her spinal impairments and shoulder impairment are severe enough to warrant additional surgery or more than the current conservative treatment plan. Moreover, the claimant is not currently engaging in physical therapy or exercising as recommended. Finally, the claimant is able to engage in work activity four days per week, on her feet, as a server. While she testified she never lifts more than ten pounds, she does lift less than ten pounds frequently

bringing dishes to customers and pouring coffee. This shows me the claimant would not be precluded from all work activity.

The record reflects the claimant's history of right knee anterior cruciate ligament (ACL) repair in June 2005. The claimant had reported it was completely resolved until September 2012 when [s]he reported pain while walking (Exhibit 4F/4). An MRI of the right knee revealed an abnormal appearance of the ACL graft, but no meniscal tear identified (Exhibit 4F/2). The claimant was assessed with chondromalacia of the patella status post ACL reconstruction. She was referred to physical therapy (Exhibit 4F/1). The record does not suggest the claimant has received additional direct treatment or participates in physical therapy. Rather, the claimant works four days per week in a position primarily on her feet which suggests to me that this impairment, while severe, does not prevent her from engaging in all work activity.

The claimant has tested positive for fibromyalgia through tender point testing. In June 2010, the claimant tested positive for 18 out of 18 tender points (Exhibit 6F/163). Other records indicate 14 out of 18 tender points as well as "active tender points" (Exhibit 6F/185). The claimant also experiences headaches. The record indicates these are related to her cervical pain. The claimant has been receiving occipital blocks "which have been of a great benefit" with her pain (Exhibit 6F/251). Overall, the claimant's impairments have been treated conservatively with medication and injections while engaging in almost substantial gainful activity. This shows me the claimant has the ability to engage in less than the full range of light work.

In June 2014, the claimant participated in a consultative examination with R. Scott Lazzara, M.D. (Exhibit 13F). The claimant exhibited reduced range of motion in her cervical spine, walked with a guarded wide based gait, and had only mild difficulty performing certain orthopedic maneuvers. Dr. Lazzara noted the claimant had no paravertebral muscle spasms, straight leg raise testing was negative, and she was overall intact neurologically. Dr. Lazzara assessed the claimant with diffuse pain and fibromyalgia noting cervical spine straightening, surgery to her knees, but that they appeared stable. Dr. Lazzara noted the claimant's history of fibromyalgia, but no trigger points were noted on the examination. Overall, he determined the claimant was not physically declining (Exhibit 13F).

(PageID.48-50).

**II.**          **Plaintiff's RFC**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). As noted above, the ALJ concluded that Plaintiff can perform a limited range of light work. Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ failed to consider her depression and anxiety and, moreover, "cherry picked the portions of the opinion evidence that favor non-disability." As noted above, the ALJ concluded that Plaintiff experiences no emotionally-based limitations. While the record does not contain an abundance of evidence concerning Plaintiff's emotional impairments, this evidence nevertheless compels the conclusion that the ALJ's RFC assessment, by failing to impose any non-exertional limitations, is not supported by substantial evidence.

In January 2007, Plaintiff was involuntarily hospitalized for psychiatric treatment following an overdose of alcohol and prescription medications. (PageID.294-302). Upon discharge, one week later, Plaintiff was diagnosed with major depressive disorder, recurrent, severe without psychotic features. (PageID.294-302). On November 27, 2012, Plaintiff reported to the emergency department "for evaluation of multiple [physical] symptoms." (PageID.1196). Plaintiff was referred for a psychiatric consult which revealed Plaintiff was

experiencing: (1) panic disorder, in partial remission; (2) major depressive disorder, recurrent, moderate; and (3) alcohol dependence, in early partial remission.   (PageID.1198-1202).

Treatment notes dated April 2, 2013, indicate that Plaintiff was being treated for depression.   (PageID.771).   Treatment notes dated October 3, 2013, indicate Plaintiff was experiencing depression and "recurrent" anxiety.   (PageID.815-17).   Plaintiff reported her anxiety improves with medication, but is exacerbated by "work stress."   (PageID.815). Physical examination notes dated June 3, 2014, indicate that Plaintiff was also "somewhat depressed and anxious."   (PageID.1448-49).   The doctor noted that Plaintiff "may have underlying PTSD with associated anxiety features which may be aggravating her physical complaints."   (PageID.1452).

On June 10, 2014, Plaintiff participated in a consultive psychological examination. (PageID.1455-61).   The examiner reported that he "did not see any evidence of a serious mental disorder," but subsequently reported that Plaintiff suffers from an "unspecified anxiety disorder." (PageID.1460).   Treatment notes dated December 23, 2015, indicate that Plaintiff was experiencing anxiety and depression.   (PageID.1687).

Simply put, while Plaintiff's emotional impairments may not constitute work preclusive impairments, the conclusion that such impose *no* limitations on her ability to function is not supported by substantial evidence.   Accordingly, the Court concludes that the ALJ's RFC assessment is not supported by substantial evidence.   Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence.   *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while

the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

## III.        Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## <u>CONCLUSION</u>

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Dated: September 13, 2018                    /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge